REVISED, June 24, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20730
_____

GUARANTY NATIONAL INSURANCE COMPANY
and LANDMARK AMERICAN INSURANCE COMPANY,

                              Plaintiffs-Counter
                              Defendants-Appellees,

                    versus

VIC MANUFACTURING COMPANY,

                              Defendant-Counter
                              Claimant-Appellant.

_____

Appeal from the United States District Court for
the Southern District of Texas
_____

June 5, 1998

Before REAVLEY, DeMOSS and PARKER, Circuit Judges.

REAVLEY, Circuit Judge:

     Guaranty National Insurance Company sued Vic Manufacturing

Company, seeking a declaratory judgment that it did not have a

duty to defend Vic under its product liability insurance policy.

The district court granted summary judgment in favor of Guaranty.

We affirm.

*Background*

     Vic manufactures dry cleaning equipment that uses

perchlorethylene (perc), a toxic chemical classified as a

"hazardous waste" by the Environmental Protection Agency.[1] Pilgrim Enterprises, Inc., purchased the equipment from Vic for use in its dry-cleaning business. The equipment contaminated Pilgrim's property as well as adjoining properties. Pilgrim sued Vic, together with other manufacturers of dry cleaning equipment and suppliers of perc, seeking to recover substantial cleanup costs. Harold and Georgina Agim, who live next door to a Pilgrim facility, sought to intervene to recover for pollution on their property.

Guaranty issued several general liability and umbrella policies to Vic that cover the relevant period. The policies at issue contain a "sudden and accidental" pollution exclusion which states that the policy does not provide coverage for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.* (emphasis added)

The district court found that the Pilgrim suit did not allege damages within the "sudden and accidental" exception to the pollution exclusion, and, thus, that Guaranty had no duty to defend Vic in the underlying suit.

---

[1] 40 C.F.R. § 261.32 (1997).

*Discussion*

We review a district court's grant of summary judgment *de novo*.[2] Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]

We review a district court's determination of state law *de novo*.[4] The parties agree that Texas law governs this diversity suit. Texas law provides that insurance coverage is determined under the "Eight Corners" or "Complaint Allegation" test. The court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading to determine whether any claim alleged by the pleading is potentially within the policy coverage.[5] The duty to defend is determined "without reference to the truth or falsity of such allegations."[6]

The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the

---

[2]*New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).

[3]Fed. R. Civ. P. 56(c).

[4]*Salve Regina College v. Russell*, 499 U.S. 225, 239 (1991).

[5]*See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

[6]*Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965).

applicability of any exclusions in the policy.[7]  Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion.[8]  The perc contamination is clearly within the pollution exclusion, so Vic has the burden to show, at this stage to plead satisfactorily, that the pollution was "sudden and accidental."  Even so, all doubt is resolved in the insured's favor.[9]

The Texas Supreme Court has not addressed the "sudden and accidental" pollution exclusion clause.[10]  This court, reviewing Texas appellate court decisions and Texas contractual interpretation rules, has held that the clause contains a temporal element in addition to the requirement of being unforseen or unexpected.[11]

The court held that the "sudden and accidental" requirement unambiguously excluded coverage for all "pollution that is not released quickly as well as unexpectedly and unintentionally."[12]

---

[7]*Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. Civ. App.--San Antonio 1994, writ denied).

[8]*Id.*

[9]*Heyden*, 387 S.W.2d at 26.

[10]*Mustang Tractor & Equip. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 91 (5th Cir. 1996).

[11]*Id.*

[12]*Id.* at 93 (citations omitted).

4

The general rule is that the insurer's duty to defend is determined solely from the allegations in the petition.[13] A total of four petitions have been filed in the underlying case: Pilgrim's Original petition, First Amended Petition, Second Amended Petition, and Agim's Plea in Intervention. An amended pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading.[14]

In the Seconded Amended Petition, Pilgrim brings claims for negligence, gross negligence, strict products liability, negligent misrepresentation, breach of warranties, and violations of the Texas Deceptive Trade Practices Act. The petition lists 37 dry-cleaning sites polluted with perc. The petition alleges that Vic and the other manufacturers "were aware of the use of PERC in the dry cleaning process and in this equipment and materials, but despite such knowledge, designed the equipment in a manner that was inherently defective and which would result in spills and/or discharges of PERC during Plaintiff's operations." Additionally, Pilgrim alleges that Vic instructed Pilgrim to drain perc into the sewage system knowing that perc would sink to the bottom and remain a potentially hazardous material. The Plea in Intervention that the Agim family filed alleges that Vic was "aware of the use of PERC in the dry cleaning process, but despite such knowledge, designed the equipment in a manner that

---

[13]*Heyden*, 387 S.W.2d 22.

[14]*Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983).

5

was inherently defective and which would result in spills and/or sudden and accidental discharges of PERC during Pilgrim's operations." Although the petitions append the words "sudden and accidental," they describe gradual pollution in the regular course of the dry-cleaning business.[15]

The court may look at evidence outside the pleadings under certain circumstances. A Texas court of appeals summarized the rule on extrinsic evidence as follows:

> Where the insurance company refuses to defend its insured on the ground that the insured is not *liable* to the claimant, the allegations in the claimant's petition control, and facts extrinsic to those alleged in the petition *may not be used* to controvert those allegations. But, where the basis for the refusal to defend is that the events giving rise to the suit are *outside the coverage* of the insurance policy, facts extrinsic to the claimant's petition *may be used* to determine whether a duty to defend exists.[16]

This court held in *Western Heritage Ins. Co. v. River Entertainment* that the court may look to evidence outside the pleadings and policy "when the petition does not contain

---

[15]The first two petitions are relevant in that Guaranty's duty to defend prior to the filing of the Second Amended Petition is based on the earlier petitions. However, those petitions do not even try to obscure the gradual by amending with "sudden and accidental" as in the later pleading.

[16]*Gonzales v. American States Ins. Co. of Tex.*, 628 S.W.2d 184, 187 (Tex. Civ. App.--Corpus Christi 1982, no writ) (emphasis in original).

sufficient facts to enable the court to determine if coverage exists."[17].61 F.3d 389 (5th Cir. 1995).[18]

To the extent that the Pilgrim pleadings are incomplete, the extrinsic evidence shows that there is no duty to defend in this case.  The interrogatories demonstrate that the perc pollution was not the result of "sudden and accidental" events.  Pilgrim's answers list seventy-seven spills at nineteen of the facilities, occurring over a period of approximately forty years.  Several of the listed spills actually are multiple spills, so that the perc pollution is the result of over a hundred separate events. Listed events include multiple still boilovers, small spills of perc upon removal and changing of filter cartridges, spills from failed filter gaskets, and spills while cleaning the machines. The amounts range from small spills of undetermined amounts to one spill of almost sixty gallons.

---

[17]998 F.2d 311, 313 (5th Cir. 1993) (citing *State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 452-53 (Tex. Civ. App. -- Corpus Christi 1992, writ denied)*; see also John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 272 (5th Cir. 1997) ("If the underlying complaint, however, does not allege facts, if taken as true, sufficient to state a cause of action under the policy, evidence adduced in a declaratory judgment action may also be considered."  Vic tries to limit *Western Heritage* by pointing to *Lafarge Corp. v. Hartford Cas. Ins. Co.*,

 61 F.3d 389 (5th Cir. 1995), which held that the exception set out in *Western Heritage* is not a broad one.  In that case, however, the underlying petition clearly alleged damages which were covered under the insurance policy.  The question was whether those damages occurred within the applicable coverage period.  Because the petition alleged damages from a continuous event, the factual allegations were sufficient to trigger coverage under the insurance policy in effect prior to the actual date when the damages were discovered.

A single covered claim will suffice to require the insurer to defend the entire case.[19]  In this case, the factual allegations do not create a single covered cause of action.  Vic cannot create a duty to defend by microanalyzing the case and finding a single spill that may have been "sudden and accidental."  The pollution exclusion clause prevents coverage "where the insured has engaged in the deliberate discharge of contaminants in the routine course of business over many years.  The fact that the insured may have also experienced isolated spills or minor accidents over the same period of time is irrelevant."[20]

The Texas Supreme Court recently confirmed that "a court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition."[21]  In this case, regardless of the catch phrases used in the petition, pollution is not "sudden and accidental" when it consists of repeated, regular discharges over numerous years in the usual course of business operation.

A case out of the Seventh Circuit, *Cincinnati Insurance Company v. Flanders Electric Motor Service, Inc.*,[22] provides a

---

[19]*Rhodes*, 719 F.2d at 119.

[20]*Snydergeneral Corp. v. Great American Ins. Co.*, 928 F. Supp. 674, 680 (N.D. Tex. 1996) (citations omitted).

[21]*Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81,82 (Tex. 1997)(citing *National Union Fire Ins. Co.*, 939 S.W.2d at 141.

[22]40 F.3d 146 (7th Cir. 1994).

8

similar scenario.  The insured company, Flanders, sent electric transformers over a twenty year period to a service shop for repairs.  Flanders was later held liable for part of the cost to cleanup leaks of polychlorinated biphenyls (PCBs) from transformers at the repair site.   The court held that the insurer did not have a duty to defend or indemnify Flanders. "Because these releases of PCBs were commonplace events which occurred in the course of MEW's regular business, they cannot be considered sudden and accidental.  The fact that one or more of these spills or leaks may have occurred suddenly and accidentally does not alter our conclusion."[23]  Several other circuits have also held that numerous pollution discharges over the years are not within the "sudden and accidental" exception to the coverage exclusion.[24].67 Cal. Rptr. 113 (Cal. Ct. App. 1997).[25]

---

[23]*Id.* at 154.

[24]*See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522 (10th Cir. 1995) (Utah law); *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432 (9th Cir. 1993) (California law); *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 938 F.2d 1423 (1st Cir. 1991); *A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co., Inc.*, 933 F.2d 66 (1st Cir. 1991) (Maine law); *United States Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988) (Kentucky law); *Great Lakes Container Corp. v. National Union Fire Ins. Co.*, 727 F.2d 30 (1st Cir. 1984) (New Hampshire law); *Cessna Aircraft Co. v. Hartford Accident & Indem. Co.*, 900 F. Supp. 1489 (D. Kan. 1995).  A California court has reached an opposing result.  In *A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*,

67 Cal. Rptr.2d 113 (Cal. Ct. App. 1997), a California appellate court found that there was a duty to defend under very similar circumstances.  However, the case is distinguishable on the grounds that the court placed the burden on the insurer to prove that the "sudden and accidental" exception to the pollution exclusion did not apply.  *Id.* at 116, 118.  Texas law places the burden on the insurer to show that an exclusion applies, but once

9

The trial court dismissed the issue of Guaranty's duty to indemnify Vic.  Guaranty argues that the issue should be decided at this time, based on the Texas Supreme Court's recent decision in *Farmers Texas Mutual Insurance Company v. Griffin,*[26] in which the Texas Supreme court held that the duty to indemnify is justiciable in a liability lawsuit when the insurer has no duty to defend.  However, Guaranty stipulated in the trial court that the issue of a duty to indemnify should not be decided at that point.  It was not decided by the district court and was not brought forward in the appeal.  Therefore we do not reach the issue of Guaranty's duty to indemnify.

AFFIRMED.

---

it has done so, the insured bears the burden to show that an exception to that exclusion applies.  *See Snydergeneral*, 928 F.Supp. at 680 n.5.  Moreover, the court noted that the evidence indicated only four or five spills, not of such frequency that they could be considered expected.  *A-H Plating*, 67 Cal. Rptr.2d at 118-19.

[26]955 S.W.2d 81 (Tex. 1997).