AMERICAN AUTOMOBILE
INSURANCE COMPANY,
Plaintiff,

v.

Danny MAYFIELD, Individually and d/b/a Mayfield & Associates; Betty Ruth Wood, Individually and as Independent Executor of the Estate of Berry Wood, Jr., Deceased; Finis Wright; Ann Wright; Billy G. Wright; Dorothy Wright; Roger Henderson as Trustee of the Wayne Henderson Trust; the Wayne Henderson Trust; Nola Henderson; and Thomas D. Dement Defendants.

No. Civ.A.5:02–CV–137–C.

United States District Court,
N.D. Texas, Lubbock Division.

July 7, 2003.

Steve A Claus, Law Office of Steve A Claus, Lubbock, TX, for Danny Mayfield.

James L Killion, Law Office of James L Killion, Lubbock, TX, for Ann Wright.

Sidney H. Davis, Jr., Touchstone Bernays, Sallas, TX, Kevin M. Murphy, Kathryn L. Shilling, Caron Constants & Wilson, Dallas, TX, for American Auto. Ins. Co.

J Jared Melton, Owen Lyle Voss Owen & Melton, Plainview, TX, for Wayne Henderson Trust.

## *ORDER*

CUMMINGS, District Judge.

On this day the Court considered American Automobile Insurance Company's ("Plaintiff") Motion for Summary Judgment filed May 15, 2003. Danny Mayfield ("Defendant") filed no response. After considering all relevant arguments and evidence, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

## I.

## BACKGROUND

Plaintiff filed this declaratory judgment action on June 21, 2002, for a determination of the parties' rights and obligations under two separate policies of insurance. On December 1, 1999, Plaintiff issued to agents of American United Life Insurance Company ("AULIC") a policy of "Life Insurance Agents Errors and Omissions Liability Coverage." Defendant Mayfield was an agent of AULIC during this policy period. On December 1, 2000, Plaintiff issued to agents of AULIC a policy of "Life Insurance Agents Errors and Omissions Liability Coverage." Defendant Mayfield was an agent of AULIC during this policy period.

On January 4, 2002, Defendant Betty Ruth Wood filed suit against Defendant Mayfield in the 64th District Court of Hale County, Texas. Defendant Wood alleges that Defendant Mayfield counseled and advised her concerning investment products and sold her three Chemical Trust Guaranteed Contracts. Defendant Wood alleged that the Chemical Trust investment was a scam and all representations made to her were fabrications, because the operation was in fact a Ponzi scheme.

On July 28, 2000, Defendants Finis Wright, Ann Wright, Billy G. Wright, and Dorothy Wright ("Wright Defendants") filed suit against Defendant Mayfield in the 72nd District Court of Lubbock County, Texas. The Wright Defendants alleged that Defendant Mayfield sold them Chemical Trust Guaranteed Contracts which were unregistered securities and that Defendant Mayfield falsely misrepresented the Chemical Trust Guaranteed Contracts as a business trust "in the business of purchasing and selling distressed properties, U.S. Treasury backed securities and bank notes." The Wright Defendants alleged that the Chemical Trust investment was a scam and all representations made to them were fabrications, because the operation was in fact a Ponzi scheme.

On January 10, 2002, Defendant Wayne A. Henderson Trust filed suit against Defendant Mayfield in the 242nd District Court of Hale County, Texas. Defendant Henderson made the same allegations as Defendant Wood and the Wright Defendants.

In a letter dated March 13, 2002, Defendant Thomas D. Dement asserted claims against Defendant Mayfield as a result of losses incurred in the Chemical Trust investment.

Defendant Mayfield tendered each of the underlying fraud actions to Plaintiff. Plaintiff seeks a declaration of no duty to defend or indemnify and contends that the allegations asserted against Defendant Mayfield in the underlying suits are not

covered pursuant to the terms and conditions of the policies at issue.

## II.

### STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotations omitted). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. FED. R. CIV. P. 56(e); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir.1996) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson*, 477 U.S. at 251, 106 S.Ct. 2505. Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*

Finally, in reviewing the summary judgment evidence, "Rule 56 does not impose upon this Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). Rather, the Court need rely only on those portions of the submitted documents to which the non-moving party directs the Court's attention. *Id. See also Forsyth v. Barr*, 19 F.3d 1527, 1536–37 (5th Cir.1994) (finding that two volumes of summary judgment evidence was insufficient to preclude summary judgment when plaintiffs failed to identify specific portions which supported their claims). Moreover, Local Rule 56.5(c) expressly requires that a party filing an appendix "must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence." To the extent Plaintiff asks this Court to search its Appendix to find evidence to support its summary judgment arguments, this Court refuses to do so. Rather, this Court will only consider the admissible summary judgment evidence discussed and specifically identified by Plaintiff.

Rule 56(e), Federal Rules of Civil Procedure, requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment should be granted. *See Eversley v. MBank Dallas*, 843 F.2d 172, 173–74 (5th Cir.1988); *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022–23 (5th Cir.1995). However, the mere fact that no opposition is filed does not excuse the moving party from meeting its burden on the summary

judgment motion. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990). If no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record *sua sponte* for some genuine issue of material fact. It may rely entirely on the evidence designated by the moving party showing no such triable issue. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992).

## III.

## DISCUSSION

Plaintiff urges this Court to grant a declaration that Plaintiff does not have a duty to defend or indemnify Defendant Mayfield, individually and/or d/b/a Mayfield & Associates, with respect to the claims asserted in the four underlying suits. The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). Plaintiff insists that it has no duty to defend and indemnify Defendant Mayfield because (1) the underlying claims fall outside the scope provided under the policies and (2) the underlying claims are excluded under specific policy exclusions.

### Duty to Defend

It is well settled that "[u]nder Texas law, a court determines an insurer's duty to defend by examining the allegations in the petition filed against the insured and the relevant insurance policy." *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir.1994). "This is sometimes referred to as the 'eight corners' rule." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). When applying the eight corners rule, the allegations in the underlying complaint should be given a liberal interpretation. *Id.*

To establish a duty to defend, the underlying pleadings must allege a claim that is potentially covered by the applicable policy. *Gulf States Ins. Co.*, 22 F.3d at 90. "But when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend." *Id.* "Stated differently, in case of doubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141.

"In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* "It is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct." *Id.* The court is not allowed to "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142. "In Texas, an insurer's contractual duty to defend must be determined from the face of the pleadings, without reference to any facts outside the pleadings." *Id.*

To assist in determining whether an insurer has a duty to defend, the Fifth Circuit has explained the parties' shifting burdens of proof as follows:

> The insured bears the initial burden of showing that the claim … is potentially within the insurance policy's scope of coverage. If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. If the insurer is successful, the burden shifts back to the insured to show that an exception to the

exclusion brings the claim ... potentially within the scope of coverage under the insurance policy.

*Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001) (internal citations omitted.)

### Insured's Initial Burden

■ Defendant Mayfield bears the initial burden of showing that the underlying plaintiffs have alleged a claim which is potentially within the insurance policy's scope of coverage. *Data Specialties, Inc. v. Transcontinental Ins. Co.,* 125 F.3d 909, 911 (5th Cir.1997). The underlying plaintiffs each seek reimbursement and restitution of all damages, including their principal investments, early withdrawal penalties, and interest which would have accrued on the funds paid and invested by them. Each of the underlying plaintiffs alleges that Defendant Mayfield, as an agent for Regal Financial, misrepresented material facts regarding the sale of securities with respect to the sale of the Chemical Trust Guaranteed Contracts.

Plaintiff contends that these allegations by the underlying plaintiffs are outside the scope of Defendant Mayfield's coverage for several reasons. First, Plaintiff contends that the Guaranteed Contracts Defendant Mayfield sold to each underlying plaintiff are in fact "securities" as defined by the policies. Plaintiff directs this Court's attention to the policies' language, which provides that "securities" shall have the same meaning as used by the Security Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisors Act of 1940. *See SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) (holding that an investment contract is defined under the Securities Act as a contract transaction, or scheme involving the investment of money in a common enterprise with profits to come solely from the efforts of the promoter or a third party). Because the Guaranteed Contracts involved the investment of money in a common enterprise, in this case Chemical Trust, and profits were to be generated solely from the efforts of its promoter, in this case Defendant Mayfield, this Court finds that the Guaranteed Contracts qualified as securities under Plaintiff's policies.

However, Plaintiff asserts that coverage relating to securities is outside the scope of the policies' coverage. Rather, Plaintiff claims that coverage relating to securities is in fact optional coverage that must be purchased in addition to Defendant Mayfield's policies. Specifically, coverage for any act, error, or omission relating to the sale or servicing of securities is provided to AULIC agents only under an optional Financial Products Endorsement ("FPE"), which states that "[t]he coverage provided by this Endorsement shall only apply to each of the NAMED INSURED who have elected such coverage." Plaintiff contends that Defendant Mayfield failed to purchase the optional FPE securities coverage. As a result, Plaintiff asks this Court to declare that there is no coverage for any act, error, or omission Defendant Mayfield may have committed in rendering or failing to render services with regard to the Guaranteed Contracts.

Defendant Mayfield has not presented this Court with evidence challenging Plaintiff's interpretation or application of the policies' definition of securities. Therefore, this Court finds that the underlying claims are not covered "professional services," because Defendant Mayfield did not purchase optional FPE coverage for securities products.

■ Second, Plaintiff contends that Defendant Mayfield's actions with respect to the alleged Guaranteed Contract transactions are not within the conduct of Defendant Mayfield's profession as a licensed life insurance agent. Plaintiff points to

the fact that the policies are limited to what the insured is licensed and authorized to sell for AULIC. Plaintiff asserts that at all times relevant to the underlying claims, Defendant Mayfield was not licensed or authorized to offer, sell, or provide advice with regard to securities, mutual funds, or variable products. Plaintiff claims that, because Defendant Mayfield was not licensed or authorized to engage in securities transactions, Defendant Mayfield's solicitation, advice, and sales with respect to the Guaranteed Contracts cannot be deemed to be within either the conduct of his profession as a licensed life and health insurance agent or within the services necessary to the conduct of his insurance business. Because Defendant Mayfield has submitted no evidence to the contrary, this Court finds that Defendant Mayfield's acts, errors, and omissions with respect to the Guaranteed Contract transactions are outside Plaintiff's policies' professional liability coverage.

Finally, Plaintiff claims that Defendant Mayfield had knowledge of similar claims that arose out of his acts, errors, and omissions in soliciting, offering, and selling the Guaranteed Contracts before the effective date of the 1999–2000 Policy. As a result, Plaintiff claims that the underlying claims are not covered by either of Plaintiff's policies. Because Defendant Mayfield does not respond to Plaintiff's contention, this Court is not required to search the record *sua sponte* for a genuine issue of material fact and may rely on the evidence designated by Plaintiff. *Guarino*, 980 F.2d at 403.

Therefore, this Court finds that Defendant Mayfield has not satisfied his initial burden of showing that the underlying plaintiffs have alleged a claim that is potentially within Plaintiff's policies' scope of coverage.

### Insurer's Burden to Prove Exclusion

■ Although Defendant Mayfield failed to satisfy his initial burden and, thus, Plaintiff's burden need not be addressed, this Court is persuaded that Plaintiff nevertheless satisfied its burden to demonstrate that an exclusion would preclude coverage. First, Plaintiff contends that coverage would be excluded because the underlying claims are based upon losses arising out of Defendant Mayfield's promises or guarantees as to the future value of the Guaranteed Contracts. The underlying plaintiffs allege that Defendant Mayfield guaranteed both the principal investment and the rate of return. Additionally, all of the underlying plaintiffs' damages arise from the failure of Chemical Trust and U.S. Guarantee to perform as promised by Defendant Mayfield. Plaintiff directs this Court's attention to Exclusion VII which provides that "[a]ny claim based upon a loss arising out of the INSURED making promises or guarantees as to the future value of an investment" does not apply to this policy. Therefore, this Court is persuaded that the underlying claims are excluded by the policies' guarantee of future value exclusion.

Second, Plaintiff contends that, because Chemical Trust was placed into receivership and unable to pay as promised under the Guaranteed Contracts, the underlying plaintiffs were no longer able to receive the monies guaranteed under their contracts and brought the underlying suits against Defendant Mayfield. Plaintiff directs this Court's attention to the fact that the policies exclude coverage for "[a]ny claim arising out of the ... receivership ... or financial inability to pay of an organization ... in which the INSURED has (directly or indirectly) placed the funds of a client or account or in which any person has invested as a result of consultation with an INSURED." Because the under-

lying plaintiffs' claims arise out of Chemical Trust and U.S. Guarantee being placed into receivership, this Court is persuaded that Plaintiff has met its burden to demonstrate that the claims are excluded under the policies' receivership exclusion.

***Insured's Burden to Prove Exception to Exclusion***

Because Plaintiff could have shown that an exclusion precluded coverage under the policies, Defendant Mayfield would now have to demonstrate that an exception to the exclusion would bring the claim potentially within the scope of coverage under the insurance policies. To the end, however, Defendant Mayfield has not presented this Court with evidence that such an exception exists.

## IV.

## CONCLUSION

Having considered all the relevant arguments and evidence, this Court **GRANTS** Plaintiff's Motion for Summary Judgment.