NAUTILUS INSURANCE COMPANY,
Plaintiff,

v.

The COUNTRY OAKS APARTMENTS,
LTD., Defendant.

No. SA–07–CA–311–H.

United States District Court,
W.D. Texas.

June 2, 2008.

**612**

John C. Tollefson, Stephen Andrew Melendi, Tollefson Bradley Ball & Mitchell, LLP, Dallas, TX, for Plaintiff.

Jeffrey E. Dahl, Harkins, Latimer & Dahl, P.C., San Antonio, TX, for Defendant.

### ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

HARRY LEE HUDSPETH, Senior District Judge.

On this day came on to be considered the motion of Plaintiff Nautilus Insurance Company for summary judgment and the motion of Defendant The Country Oaks Apartments, Ltd. for summary judgment. Having considered the motions, responses, and applicable law, the Court finds that Plaintiff's motion should be granted, and Defendant's motion should be denied.

## I. BACKGROUND

This is an insurance coverage dispute, in which Plaintiff Nautilus seeks a declaratory judgment that it has neither a duty to defend nor a duty to indemnify Defendant Country Oaks. Nautilus issued a commercial general liability policy ("Policy") to Country Oaks for the period August 23, 2001 to August 23, 2002. One of the residents of Country Oaks during this period, Kelly Schencks, has filed a personal injury action in state court against Country Oaks, on behalf of her daughter Kaia Alvarado. The state court petition alleges that during some roofing work on the apartment complex, the vent designed to release carbon monoxide from Schencks' furnace was covered. As a result, higher than normal concentrations of carbon monoxide accumulated in her apartment. At the time of the accumulation, Schencks was pregnant with Alvarado, who suffered carbon monoxide poisoning. Consequently, Alvarado allegedly developed and now suffers from severe, permanent, and disabling injuries, including seizures.

Arguing that Alvarado's injuries are not covered by the Policy, Nautilus has refused to defend or indemnify Country Oaks in the state court action, and has brought this action for declaratory judgment to vindicate that refusal. Nautilus contends that Alvarado's injuries are explicitly excluded from insurance coverage under a pollution exclusion contained in the Policy. The pollution exclusion states that insurance does not apply to:

  f.  Pollution

  (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged,

or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

The term "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals, or waste. Waste includes material to be recycled, reconditioned or reclaimed." Relying upon the pollution exclusion in the Policy, Nautilus has filed a motion for summary judgment. Country Oaks has filed its own motion for summary judgment, contending that the exclusion does not apply, and that Nautilus is obligated to defend it.

## II. APPLICABLE LAW

### A. Duty to Defend

In diversity cases, such as this one, federal courts look to the substantive law of the forum state. *Tex. Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 847 (5th Cir.2007). In Texas, an insurer's duty to defend its insured is determined by the "eight corners" rule, which requires that a court compare the allegations in the petition in the underlying lawsuit with the insurance policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). An "insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy." *Utica Nat'l Ins. Co. of Tex. v. Am. Indent.*, 141 S.W.3d 198, 201 (Tex. 2004). When applying the eight corners rule, courts give the allegations in the petition a liberal interpretation. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

### B. Interpretation and Construction of Insurance Policies

The same rules of interpretation and construction which govern contracts apply to insurance policies. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). The plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from that plain language. *See Utica Nat'l*, 141 S.W.3d at 202. If the policy language has only one reasonable interpretation, then it is not ambiguous. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006). If the contract is susceptible of two or more reasonable interpretations, then it is ambiguous and a court must adopt the insured's construction. *Fiess*, 202 S.W.3d at 746. "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Utica Nat'l*, 141 S.W.3d at 202. However, the mere fact that the parties offer different contract interpretations does not create an ambiguity. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003).

## III. ANALYSIS

### A. Discharge, Dispersal, Seepage, Migration, Release or Escape

Country Oaks contends that "emission" of carbon monoxide from a properly functioning furnace is not a "discharge" of carbon monoxide. This argument fails because it ignores the "plain, ordinary, and generally accepted meaning" of discharge. *Provident Am. Ins. v. Castaneda*, 988 S.W.2d 189, 210 (Tex.1998). To "discharge" a pollutant means to emit it. *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex.App.-San Antonio 2002)(quoting Merriam Webster Dictionary 220 (1994)). Emission is the same as discharge; therefore, the Court will refer to the ordinary "emission" of carbon monoxide from the furnace as the "discharge" of carbon monoxide.

■ Next, Country Oaks claims that the exclusion does not apply because Alvarado's injuries were not caused by a "discharge, dispersal, seepage, migration, release, or escape" of carbon monoxide; rather, the lack of a dispersal, release, or escape of carbon monoxide caused her injuries. In other words, the covering of the roof vent (which in turn caused the accumulation of carbon monoxide) was the cause of the injury, and this does not fall within the language of the exclusion. In Country Oaks' view, there are two events at play that should be viewed separately: (1) the regular discharge of carbon monoxide from the properly functioning furnace; and (2) the subsequent accumulation of carbon monoxide because of the covered vent. However, this interpretation ignores the unambiguous language of the exclusion and, therefore, is unreasonable.

■ When interpreting causation language contained in insurance policies, Texas courts and the Fifth Circuit applying Texas law have recognized a distinction between cases involving "separate and independent" causation and "concurrent" causation. *Hydro Tank*, 497 F.3d at 451. In cases involving "separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." *Utica Nat'l*, 141 S.W.3d at 204 (citing *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir.1990)). Conversely, in cases involving "concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered." *Id.* (citing *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771–72 (5th Cir.1999)).

■ The Nautilus Policy excludes coverage for bodily injury that "would not have occurred *in whole or part but for*" the discharge of pollutants (emphasis added).

Thus, the clear language of the exclusion indicates that only "but for" causation is necessary to trigger the exclusion; direct or proximate causation is not required. This conclusion is further supported by the fact that injury need only be caused "in part" by the discharge of pollutants. The causation requirement would be quite different if the exclusion required the injury be "due to" or "caused by" the discharge. *See Utica Nat'l*, 141 S.W.3d at 203 (discussing the different causation required by the language "arising out of" versus "due to" or "caused by"). However, this language is not present in the exclusion, and only "but for" causation need be established for coverage to be excluded.

■ There is no doubt that Alvarado's injuries would not have occurred but for the discharge of carbon monoxide from the furnace. Alvarado's petition makes clear that she suffered injuries "as a result of the exposure" to the higher than normal levels of carbon monoxide that accumulated in the apartment. The only way that Alvarado could have been exposed to a high concentration of carbon monoxide is if the gas was first discharged from the furnace. Therefore, the initial discharge of carbon monoxide and the subsequent accumulation of that carbon monoxide combined to cause Alvarado's injuries. Neither the discharge alone nor the containment alone is an independent and separate cause: without the blocked vent, the discharge would not have caused any injury, and without the discharge, a blocked vent would not have caused any injury. Because the two causes cannot be separated, the exclusion is triggered. *Utica Nat'l*, 141 S.W.3d at 204. Although Country Oaks has attempted to frame the cause of the injury so as to invoke coverage, because the injuries would not have occurred but for the initial discharge, the Court finds that the pollution exclusion bars cov-

erage. *See Hamm v. Allstate Ins. Co.,* 286 F.Supp.2d 790, 795 (N.D.Tex.2003).

## B. Definition of Pollutant

■ Country Oaks argues that carbon monoxide, when discharged from a properly functioning furnace, is not a pollutant because it does not irritate or contaminate. In essence, Country Oaks' interpretation is that carbon monoxide is merely a potential pollutant when it is discharged from a furnace and properly contained in and released through a vent, and it becomes an actual pollutant only when it fails to vent outside the apartment. This interpretation is incorrect and unreasonable because it disregards the plain language of the Policy and the relevant case law interpreting similar policy language.

The Fifth Circuit rejected this type of reasoning in *Am. States Ins. Co. v. Nethery,* 79 F.3d 473, 476 (5th Cir.1996). Although the *Nethery* court was using Mississippi law to interpret a pollution exclusion, the exclusion was nearly identical[1] to the Nautilus exclusion, and the court did not rely on any canon of contract interpretation that differed between Mississippi and Texas. In *Nethery,* the fumes from industry standard paint and glue injured a consumer who was hypersensitive to chemicals. *Id.* at 474. The insured contended that paint and glue fumes did not constitute an "irritant" because they did not normally inflict injury. *Id.* The court rejected this contention, concluding that the district court had impermissibly altered the policy's unambiguous terms by defining a pollutant as only a substance which normally inflicts injury. *Id.* at 475. This conclusion relied in part upon the reasoning in *Am. States Ins. Co. v. F.H.S., Inc.,* 843

F.Supp. 187 (S.D.Miss.1994). The *F.H.S.* court concluded that ammonia constituted a pollutant despite the fact that, considering the amount and circumstances of its release, it would not generally cause injury. 843 F.Supp. at 189–190.

Likewise, a Texas appellate court rejected attempts by an insured to redefine the term "pollutant." *Zaiontz,* 87 S.W.3d at 573. In *Zaiontz,* an employee was injured when he sprayed a smoke and fire eliminator in the interior of a smoke-damaged airplane. *Id.* at 566. The injured argued that "the pollution exclusion can only apply when the potential pollutant substance has entered an area where it can be seen as some type of actual pollution." *Id.* at 573. The court disagreed with this argument because the plain language of the policy defined "pollutant" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* Country Oaks' argument is almost identical: carbon monoxide is only a pollutant when it enters an area where it can be seen as a pollutant (namely, an enclosed apartment).

In *United Nat'l Ins. Co. v. Hydro Tank, Inc.,* three refinery workers were injured while removing petroleum-byproduct sludge from a mixing tank. 497 F.3d 445, 447 (5th Cir.2007). Two of the workers were overcome by fumes and fell face-first into the sludge; the third pulled his co-workers out of the tank. *Id.* They sued the owner of the refinery, who settled and sought indemnification from its insurer. *Id.* The insured argued, among other things, that petroleum products, such as the sludge, are not pollutants when they are stored where they belong. *Id.* at 450.

---

**1.** The Nethery policy did not apply to: " 'Bodily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." Pollutants meant "any sold, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

The Fifth Circuit was not persuaded because the policy at issue explicitly and broadly defined "pollutant."[2]

Here, Country Oaks contends that carbon monoxide is not considered a pollutant when contained where it belongs, that is, in a ventilation duct that empties outside the apartment. Further, Alvarado alleges that she sustained injury as a result of exposure to high concentrations of carbon monoxide-not a slight exposure that ordinarily causes no harm. The *Hydro Tank* court responded to similar allegations by emphasizing that the injured workers alleged they were exposed to high levels of toxic substances, not slight levels that would Ordinarily cause no harm. *Id.* In short, this Court concludes that Country Oaks' arguments as to why carbon monoxide is not a pollutant have been foreclosed by *Nethery*, *Zaiontz*, and *Hydro Tank*.

"Whether the policy definition [of pollutants] comports with this court's [or Country Oaks'] notion of the usual meaning of 'pollutants' is not the issue." *Nethery*, 79 F.3d at 475–76. The issue is whether the policy definition of pollutant is ambiguous. While the Policy's definition may be broad, encompassing *any* gaseous irritant or contaminant, it is neither patently nor latently ambiguous. *See generally CBI Indus.*, 907 S.W.2d at 521 (finding that an insurance policy with an identical definition of pollutant was not ambiguous on its face or in the context of the claim).

## C. Reasonable Expectations

■ Country Oaks argues that "to exclude coverage for carbon monoxide poisoning would not be within the reasonable, objective expectations of owners of apartment buildings such as Country Oaks." MSJ at 21. However, a court should not engage in analysis of the parties' reasonable expectations if the language of the contract is unambiguous and, thus, a clear expression of the parties' intentions. *CBI Indus.*, 907 S.W.2d at 520. Moreover, as Nautilus points out, two recent decisions suggest that courts should not use reasonable expectations as a method of contract interpretation. *Constitution State Ins. Co. v. Iso–Tex*, 61 F.3d 405, 410 (5th Cir.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

## IV. CONCLUSION

It is therefore ORDERED that the motion of Plaintiff Nautilus Insurance Company for summary judgment be, and it is hereby, GRANTED.

It is further ORDERED that a declaratory judgment be, and it is hereby, entered in favor of the Plaintiff Nautilus Insurance Company, and that the Plaintiff has no duty to defend Country Oaks Apartments, Ltd., in the case styled *Schencks v. Mangold Roofing & Sheet Metal, Inc., et al*, pending in the 166th District Court of Bexar County, Texas.

It is further ORDERED that the motion of Defendant and Counter Plaintiff Country Oaks Apartments, Ltd., for summary judgment be, and it is hereby, DENIED.

It is further ORDERED that judgment on the counterclaim of Counter Plaintiff Country Oaks Apartments, Ltd., be, and it is hereby, entered in favor of Counter Defendant Nautilus Insurance Company, and that Country Oaks Apartments, Ltd., take nothing by its counterclaim.

---

**2.** The definition was identical to the Nautilus definition.